## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| NARGES YUSUF | * | Case No. 08-18603 |
| | | (Chapter 7) |
| Debtor | * | |

_____

| | | |
|---|---|---|
| CHERYL E. ROSE, TRUSTEE | * | |
| 12154 Darnestown Road, Box 623 | | |
| Gaithersburg, MD 20878 | * | |
| Plaintiff, | * | |
| v. | * | |
| | | Adversary No. _____ |
| OSCAR RIVAS | * | |
| 8694 Carlton Dr | | |
| Manassas, VA 20110 | * | |
| and | * | |
| SHIRIN TABIB | * | |
| Address Unknown | | |
| | * | |
| and | | |
| | * | |
| MOHAMMAD REZA TAHBAZ | * | |
| Address Unknown | | |
| | * | |
| and | * | |
| MARYAM SARRESHTEN, | * | |
| Address Unknown | | |
| | * | |
| and | | |
| | * | |
| XYZ CORPORATION, | * | |
| Identity and Address Unavailable, | | |
| | * | |
| Defendants. | * | |

_____

## COMPLAINT FOR AVOIDANCE AND RECOVERY
## OF PREFERENTIAL PAYMENTS OR FRAUDULENT CONVEYANCES

CHERYL E. ROSE ("Plaintiff"), the Chapter 7 Trustee for the Bankruptcy Estate of

Narges Yusef (the "Debtor"), by James M. Hoffman, Esq., pursuant to 11 U.S.C. §§ 547, 548

and 550 files his Complaint against Oscar Rivas, Shirin Tabib, Mohammad Reza Tahbaz,

Maryam Sarreshten, and XYZ Corporation ("Defendants"), and states as follows:

## JURISDICTION

1.      This is an adversary proceeding brought pursuant to Rule 7001 of the Bankruptcy

Rules.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 1334 and 157, 11 U.S.C. §§ 547, 548 and 550 and Rule 7001 of the Bankruptcy Rules.

3.      This adversary proceeding is a core proceeding as defined by 28 U.S.C. § 157.

## THE PARTIES

4.      Defendant Oscar Rivas ("Rivas") is an individual who, upon information and

belief, lives in Manassas, Virginia, and was an employee/agent of XYZ Corporation at the time

of the financial transfers discussed herein.

5.      Defendant Shirin Tabib ("Tabib") is an individual whose address is unavailable

and will be obtained by the Trustee, and, upon information and belief, was an employee/agent of

XYZ Corporation at the time of the financial transfers discussed herein.

6.      Defendant Mohammad Reza Tahbaz ("Tahbaz") is an individual whose address is

unavailable and will be obtained by the Trustee, and, upon information and belief, was an

employee/agent of XYZ Corporation at the time of the financial transfers discussed herein.

7.    Defendant Maryam Sarreshten ("Sarreshten") is an individual whose address is unavailable and will be obtained by the Trustee, and, upon information and belief, was an employee/agent of XYZ Corporation at the time of the financial transfers discussed herein.

8.    Defendant XYZ Corporation is a corporation or series of corporations that, upon information and belief, is/are, in part, engaged in the business of wire transfers originating in the United States and terminating in countries outside of the United States, including those countries prohibited by United States federal laws and regulations to receive electronic transfers of monies.

9.    Upon information and belief, the Defendants are together or in part a network that transfers funds overseas to Middle Eastern countries where commercial banking through wire transfers and other commercial means with the United States of America is prohibited or inefficient.  *See* 31 C.F.R. 560.516 (Prohibited payment and United States dollar clearing transactions involving Iran).

10.    On or about June 30, 2008, the Debtor filed a Petition for Bankruptcy.

11.    Thereafter, the Plaintiff was appointed as the Interim Chapter 7 Trustee of the Debtor's Estate and continues to serve in that capacity.

12.    The 341 Meeting of Creditors was conducted.

13.    After review of the Debtor's Schedules and Statement of Financial Affairs and conducting the meeting of creditors, the Plaintiff discovered that the Debtor refinanced two (2) parcels of real property located at:

A.    14312 Fallsmere Circle, Gainesville, VA 20155, and received

approximately $100,000 in excess proceeds on or about July 25, 2005.

*See* Debtor's Statement of Financial Affairs, § 10 (Other Transfers), at 9, attached hereto as Exhibit 1; and

B.    6697 Folkers Landing, Centreville, VA 20120 and received approximately $170,000 in excess proceeds on or about October 19, 2006 (together, the "Properties."). *See* Debtor's Statement of Financial Affairs, § 10 (Other Transfers), at 9, attached hereto as Exhibit 1.

14.    In 2007, lenders foreclosed on both Properties.

15.    The Debtor's Rule 2004 Examination and a review of her financial records show that she made the following transfers (together, the "Transfers") to the Defendants:

A.    On or about October 30, 2006, the Debtor sent $100,000 to Shirin Tabib via wire transfer, Transfer ID No. 2006103000227264 through "Washington Mutual Bank." *See* Debtor's Bank of America Regular Savings Statement, attached hereto as Exhibit 2.

B.    On or about October 30, 2006, the Debtor sent $30,000 to Maryam Sarreshten via wire transfer, Transfer ID No. 2006103000228915 through "U.S. Bank." *See* Debtor's Bank of America Regular Savings Statement, attached hereto as Exhibit 2.

C.    On or about October 30, 2006, the Debtor sent $20,000 to Mohammad Reza Tahbaz via wire transfer, Transfer ID No. 2006103000228418. *See* Debtor's Bank of America Regular Savings Statement, attached hereto as Exhibit 2.

4

D.     On or about December 6, 2006, the Debtor transferred $80,000 to Oscar

Rivas via wire transfer.  *See* Rivas Funds Transfer Request, attached

hereto as Exhibit 3.

16.     The Debtor conceded in her Rule 2004 Examination that the funds obtained from

the refinance of the Properties constituted a substantial portion of the funds used in the Transfers.

17.     The Debtor asserts that she transferred the proceeds at the request of her parents

to each individual Defendant because they worked for themselves and/or XYZ Corporation, a

company that had the means and resources to forward the funds to various bank accounts in Iran.

18.     The Debtor conceded that the Transfers terminated in Iran, thus in violation of

United States Department of Treasury regulations governing trade transactions.  *See* 31 C.F.R.

Part 560.

19.     Although the Transfers were allegedly made to satisfy a debt with the Debtor's

parents, they nevertheless do not qualify as exceptions to transfers related to "non-commercial

remittance to or from Iran" under 31 C.F.R. 560.516(a)(2).

20.     As such transfers violate United States laws and regulations, and all debts the

Debtor created or attempted to satisfy related to the Transfers are void.

21.     After the Transfers of funds identified above to the Defendants, the Debtor was

rendered insolvent.

**COUNT I**
Avoidance of Fraudulent Conveyances Under 11 U.S.C. §548

22.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 21

as if fully set forth herein.

5

23.     The Transfers to the Defendants were each a transfer within the meaning of 11 U.S.C. § 101(54).

24.     The funds transferred were property of the Debtor that, but for the Transfers, would have been property of the Debtor's bankruptcy estate.

25.     At the time of the Transfers, the Debtor was not indebted to the Defendants.

26.     The Debtor received no consideration in exchange for the Transfers.

27.     The Debtor was insolvent on the date that the Transfers were made, as demonstrated by foreclosures on both properties within approximately twelve months of the transfers.  *See* Debtor's Statement of Financial Affairs § 5, at 3, attached hereto as Exhibit 1 (foreclosure on Gainesville property December 2007; foreclosure on Centreville property July 2007).

WHEREFORE, the Plaintiff demands the following relief:

A.     That this Court enter judgments against the Defendants and in favor of the Plaintiff as follows:

> i.      $100,000 against Tabib;
>
> ii.     $30,000 against Sarreshten;
>
> iii.    $20,000 against Tahbaz;
>
> iv.     $80,000 against Rivas; and
>
> v.      $230,000 against XYZ Corporation; and

B.     For such other and further relief as the nature of this cause may require.

**COUNT II**
Fraudulent Conveyance under 11 U.S.C. § 544 as to
Defendants Tabib, Sarreshten, and Tahbaz: Virginia Law

28.     The allegations set forth in Paragraphs 1 through 27 of this Complaint are incorporated herein by reference as if set forth herein.

29.     The United States Bankruptcy Code provides that a Trustee may avoid a "transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under section 502 or not allowable under section 502(e).  11 U.S.C. 544(b)(1).

30.     The Code further provides that, " . . . to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee."

11 U.S.C. § 550(a).

31.     At the time of the conveyance to the Defendants, the Debtor had unsecured creditors with permissible claims pursuant to 11 U.S.C. § 502.  *See, e.g.*, Debtor's Petition for Bankruptcy Schedule F (Creditors Holding Unsecured Nonpriority Claims), at attached hereto as Exhibit 4 (e.g., $134,202.00 owed to Home Coming Funding, 2711 N. Haskell Avenue, SW 1, Dallas, Texas 75204, an account the Debtor opened on November 1, 2006 and last active on April 1, 2007, the claim that arose due to the refinancing issue; $5,061.00 owed to Target NB,

7

P.O. Box 673, Minneapolis, Minnesota, 55440, an account opened on January 1, 2005 and last active on May 16, 2008).

32.     The Debtor initiated the Transfers to the Defendants Tabib, Sarreshten, and Tahbaz on October 30, 2006 while she was a resident of the Commonwealth of Virginia.  *See* Debtor's Statement of Financial Affairs, § 15 (Prior Address of Debtor), at 10, attached hereto as Exhibit 1.  Accordingly, the applicable law for the October 30, 2006 transfers is the Annotated Code of the Commonwealth of Virginia.

33.     The Annotated Code of the Commonwealth of Virginia provides that, "Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made."  Va. Code. Ann. § 8.01-253 (Limitation of suits to avoid voluntary conveyances, etc.).

34.     First, the Debtor was rendered insolvent by the Transfers, as demonstrated by foreclosures on both properties within approximately twelve months of the transfers.  *See* Debtor's Statement of Financial Affairs § 5, at 3, attached hereto as Exhibit 1 (foreclosure on Gainesville property December 2007; foreclosure on Centreville property July 2007).

35.     Second, the Transfers were without consideration as the transferees provided nothing in exchange for the Transfers and the Debtor received no benefit from the transferees.

36.     The Debtor knew that the refinancing and Transfers of the proceeds placed such proceeds outside the reach of creditors and would leave her insolvent and without the ability to repay her creditors, secured and unsecured.

37.     The Defendants had no entitlement to the proceeds of the real estate sold by the Debtor.

38.     The Defendants routed funds through various entities to hinder, delay and defraud collection of the Debtor's funds by creditors and prospective creditors.

39.     The Transfers by the Debtor to the Defendants were intended to violate the laws of the United States of America.

40.     The transfers by the Debtor to the Defendants are fraudulent conveyances under Ann. Code of Va. § 8.01-253.

41.     Pursuant 11 U.S.C. §§ 544 and 550, Plaintiff has standing to avoid the transfers in issue.

WHEREFORE, the Plaintiff demands the following relief:

A.     That this Court enter a judgment against the Defendants and in favor of the Plaintiff as follows:

        i.     $100,000 against Tabib;

        ii.     $30,000 against Sarreshten;

        iii.     $20,000 against Tahbaz; and

B.     For such other and further relief as the nature of this cause may require.

**COUNT III**
Fraudulent Conveyance under 11 U.S.C. § 544
as to Defendant Rivas: District of Columbia Law

42.     The allegations set forth in Paragraphs 1 through 41 of this Complaint are incorporated herein by reference as if set forth herein.

43.     The United States Bankruptcy Code Provides that a Trustee may avoid a "transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under section 502 or not allowable under section 502(e).  11 U.S.C. 544(b)(1).

44.     The Code further provides that, " . . . to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

       (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

       (2) any immediate or mediate transferee of such initial transferee."

11 U.S.C. § 550(a).

45.     At the time of the conveyance to the Defendants, the Debtor had unsecured creditors with permissible claims pursuant to 11 U.S.C. § 502.  *See, e.g.*, Debtor's Petition for Bankruptcy Schedule F (Creditors Holding Unsecured Nonpriority Claims), at attached hereto as Exhibit 4 (e.g., $134,202.00 owed to Home Coming Funding, 2711 N. Haskell Avenue, SW 1, Dallas, Texas 75204, an account the Debtor opened on November 1, 2006 and last active on April 1, 2007, the claim that arose due to the refinancing issue; $5,061.00 owed to Target NB,

10

P.O. Box 673, Minneapolis, Minnesota, 55440, an account opened on January 1, 2005 and last active on May 16, 2008).

46.    The Debtor initiated the Transfers to the Defendant Rivas on December 6, 2006, while she was a resident of the District of Columbia.  *See* Debtor's Statement of Financial Affairs, § 15 (Prior Address of Debtor), at 10, attached hereto as Exhibit 1.  Accordingly, the applicable law for the December 6, 2006 transfer is the Code of the District of Columbia.

47.    The Code of the District of Columbia provides that, "A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  D.C. Code § 28-3105(a) (Transfers fraudulent as to present creditors).

48.    First, the Debtor was rendered insolvent by the Transfers, as demonstrated by foreclosures on both properties within approximately twelve months of the transfers.  *See* Debtor's Statement of Financial Affairs § 5, at 3, attached hereto as Exhibit 1 (foreclosure on Gainesville property December 2007; foreclosure on Centreville property July 2007).

49.    Second, the Transfers were without consideration or reasonably equivalent value as the transferees provided nothing in exchange for the Transfers and the Debtor received no benefit from the transferees.

11

50.    The Debtor knew that the refinancing and Transfers of the proceeds placed such proceeds outside the reach of creditors and would leave her insolvent and without the ability to repay her creditors, secured and unsecured.

51.    The Defendants had no entitlement to the proceeds of the real estate sold by the Debtor.

52.    The Defendants routed funds through various entities to hinder, delay and defraud collection of the Debtor's funds by creditors and prospective creditors.

53.    The Transfers by the Debtor to the Defendants were intended to violate the laws of the United States of America.

54.    The transfers by the Debtor to the Defendants are fraudulent conveyances under the Code of the District of Columbia § 28-3105.

55.    Under 11 U.S.C. §§ 544 and 550, Plaintiff has standing to avoid the transfers in issue.

WHEREFORE, the Plaintiff demands the following relief:

A.    That this Court enter a judgment in favor of the Plaintiff and against the Defendant Rivas in the amount of $80,000; and

B.    For such other and further relief as the nature of this cause may require.

### COUNT IV
Fraudulent Conveyance under 11 U.S.C. § 544 as to
Defendants Tabib, Sarreshten, Tahbaz, and Rivas: Maryland Law

56.    The allegations set forth in Paragraphs 1 through 55 of this Complaint are incorporated herein by reference as if set forth verbatim herein.

57.    The United States Bankruptcy Code Provides that a Trustee may avoid a "transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under section 502 or not allowable under section 502(e).  11 U.S.C. 544(b)(1).

58.    The Code further provides that, " . . . to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee."

11 U.S.C. § 550(a).

59.    At the time of the conveyance to the Defendants, the Debtor had unsecured creditors with permissible claims pursuant to 11 U.S.C. § 502.  *See, e.g.*, Debtor's Petition for Bankruptcy Schedule F (Creditors Holding Unsecured Nonpriority Claims), at attached hereto as Exhibit 4 ($134,202.00 owed to Home Coming Funding, 2711 N. Haskell Avenue, SW 1, Dallas, Texas 75204, an account the Debtor opened on November 1, 2006 and last active on April 1, 2007, the claim that arose due to the refinancing issue; $5,061.00 owed to Target NB, P.O. Box 673, Minneapolis, Minnesota, 55440, an account opened on January 1, 2005 and last active on May 16, 2008).

60.    At the time the Debtor filed a petition for Bankruptcy, she was a resident of the State of Maryland.   In the alternative to Count II and Count III, the applicable law governing transfers is the Annotated Code of Maryland.

61.    The Commercial Law Article of the Annotated Code of Maryland states that, "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."  Md. Code Ann., Comm. Law § 15-204.  Insolvent is defined as a person whose "present fair market value of . . . assets is less than the amount required to pay . . . probable liability on his existing debts as they become absolute and matured."  *Id.* at 15-202.

62.    The Commercial Law Article further provides "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud present or future creditors is fraudulent as to both present and future creditors."  Md. Code Ann., Commercial Law §15-207.

63.    First, the Debtor was rendered insolvent by the Transfers, as demonstrated by foreclosures on both properties within approximately twelve months of the transfers.  *See* Debtor's Statement of Financial Affairs § 5, at 3, attached hereto as Exhibit 1 (foreclosure on Gainesville property December 2007; foreclosure on Centreville property July 2007).

64.    Second, the Transfers were without consideration as the transferees provided nothing in exchange for the Transfers and the Debtor received no benefit from the transferees.

14

65.     The Debtor knew that the refinancing and Transfers of the proceeds placed such proceeds outside the reach of creditors and would leave her insolvent and without the ability to repay her creditors, secured and unsecured.

66.     The Defendants had no entitlement to the proceeds of the real estate sold by the Debtor.

67.     The Defendants routed funds through various entities to hinder, delay and defraud collection of the Debtor's funds by creditors and prospective creditors.

68.     The Transfers by the Debtor to the Defendants were, or may have been, intended to violate the laws of the United States of America.

69.     The transfers by the Debtor to the Defendants are fraudulent conveyances under Md. Code Ann., Comm. Law Art. §§ 15-201 *et seq.*

70.     Pursuant to 11 U.S.C. §§ 544 and 550, Plaintiff has standing to avoid the transfers in issue.

WHEREFORE, the Plaintiff demands the following relief:

A.     That this Court enter a judgment against the Defendants and in favor of the Plaintiff as follows:

     i.     $100,000 against Tabib;

     ii.     $30,000 against Sarreshten;

     iii.     $20,000 against Tahbaz; and

     iv.     $80,000 against Rivas; and

B.     For such other and further relief as the nature of this cause may require.

15

**COUNT V**
Fraudulent Conveyance under 11 U.S.C. § 544 as to
Defendant XYZ Corporation via Agency: Virginia Law

71.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70 as if fully set forth herein.

72.     The United States Bankruptcy Code provides that a Trustee may avoid a "transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under section 502 or not allowable under section 502(e).  11 U.S.C. 544(b)(1).

73.     The Code further provides that, " . . . to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

   (2) any immediate or mediate transferee of such initial transferee."

11 U.S.C. § 550(a).

74.     At the time of the conveyance to the Defendants, the Debtor had unsecured creditors with permissible claims pursuant to 11 U.S.C. § 502.  *See, e.g.*, Debtor's Petition for Bankruptcy Schedule F (Creditors Holding Unsecured Nonpriority Claims), at attached hereto as Exhibit 4 ($134,202.00 owed to Home Coming Funding, 2711 N. Haskell Avenue, SW 1, Dallas, Texas 75204, an account the Debtor opened on November 1, 2006 and last active on April 1, 2007, the claim that arose due to the refinancing issue; $5,061.00 owed to Target NB, P.O. Box

16

673, Minneapolis, Minnesota, 55440, an account opened on January 1, 2005 and last active on May 16, 2008).

75.     The Debtor initiated the Transfers to the Defendants Tabib, Sarreshten, and Tahbaz on October 30, 2006 while she was a resident of the Commonwealth of Virginia. *See* Debtor's Statement of Financial Affairs, § 15 (Prior Address of Debtor), at 10, attached hereto as Exhibit 1. Accordingly, the applicable law for the October 30, 2006 transfers is the Annotated Code of the Commonwealth of Virginia.

76.     At all times relevant to the Transfers on or about October 30, 2006, upon information and belief, the Defendants Tabib, Sarreshten, and Tahbaz were agents/employees of XYZ Corporation.

77.     At all times relevant to the Transfers on or about October 30, 2006, upon information and belief, the Defendants, Tabib, Sarreshten, and Tahbaz were acting within the scope of their employment and for the benefit of XYZ Corporation in receiving the proceeds the Debtor transferred and then forwarding the proceeds to her family in Iran, conduct which is prohibited by federal laws and regulations.

78.     The Annotated Code of the Commonwealth of Virginia provides that, "Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made." Va. Code. Ann. § 8.01-253 (Limitation of suits to avoid voluntary conveyances, etc.).

17

79.    First, the Debtor was rendered insolvent by the Transfers, as demonstrated by foreclosures on both properties within approximately twelve months of the transfers.  *See* Debtor's Statement of Financial Affairs § 5, at 3, attached hereto as Exhibit 1 (foreclosure on Gainesville property December 2007; foreclosure on Centreville property July 2007).

80.    Second, the Transfers were without consideration as the Defendants provided nothing in exchange for the Transfers and the Debtor received no benefit from the transferees.

81.    The Debtor knew that the refinancing and Transfers of the proceeds placed such proceeds outside the reach of creditors and would leave her insolvent and without the ability to repay her creditors, secured and unsecured.

82.    The Defendant XYZ Corporation received the proceeds of the transfers through the authorized conduct of its agents/employees, Tabib, Sarreshten, and Tahbaz, and had no entitlement to the proceeds that the Debtor transferred.

83.    The Defendant XYZ Corporation routed funds through various entities to hinder, delay and defraud collection of the Debtor's funds by creditors and prospective creditors.

84.    The Transfers by the Debtor to the Defendant XYZ Corporation were intended to violate the laws of the United States of America.

85.    The transfers by the Debtor to the Defendant XYZ Corporation are fraudulent conveyances under Ann. Code of Va. § 8.01-253.

86.    Pursuant 11 U.S.C. §§ 544 and 550, Plaintiff has standing to avoid the transfers in issue.

WHEREFORE, the Plaintiff demands the following relief:

A.    That this Court enter a judgment against the Defendant XYZ Corporation and in favor of the Plaintiff in the amount of $150,000, calculated as the sum total of

      i.    $100,000 for the conduct of Tabib, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds;

      ii.    $30,000 for the conduct of Sarreshten, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds; and

      iii.    $20,000 for the conduct of Tahbaz, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds.

B.    For such other and further relief as the nature of this cause may require.

**COUNT VI**
Fraudulent Conveyance under 11 U.S.C. § 544 as to
Defendant XYZ Corporation via Respondeat Superior: District of Columbia Law

87.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 86 as if fully set forth herein.

88.    The United States Bankruptcy Code provides that a Trustee may avoid a "transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under section 502 or not allowable under section 502(e).  11 U.S.C. 544(b)(1).

89.    The Code further provides that, " . . . to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

19

(1) the initial transferee of such transfer or the entity for whose benefit such

transfer was made; or

(2) any immediate or mediate transferee of such initial transferee."

11 U.S.C. § 550(a).

90.     At the time of the conveyance to the Defendants, the Debtor had unsecured

creditors with permissible claims pursuant to 11 U.S.C. § 502.  *See, e.g.*, Debtor's Petition for

Bankruptcy Schedule F (Creditors Holding Unsecured Nonpriority Claims), at attached hereto as

Exhibit 4 ($134,202.00 owed to Home Coming Funding, 2711 N. Haskell Avenue, SW 1, Dallas,

Texas 75204, an account the Debtor opened on November 1, 2006 and last active on April 1,

2007, the claim that arose due to the refinancing issue; $5,061.00 owed to Target NB, P.O. Box

673, Minneapolis, Minnesota, 55440, an account opened on January 1, 2005 and last active on

May 16, 2008).

91.     The Debtor initiated the Transfers to the Defendant Rivas on December 6, 2006

while she was a resident of the District of Columbia.  *See* Debtor's Statement of Financial

Affairs, § 15 (Prior Address of Debtor), at 10, attached hereto as Exhibit 1.  Accordingly, the

applicable law for the December 6, 2006 transfer is the Code of the District of Columbia.

92.     At all times relevant to the Transfers on or about December 6, 2006, upon

information and belief, the Defendant Rivas was an agent/employee of XYZ Corporation.

93.     At all times relevant to the Transfers on or about December 6, 2006, upon

information and belief, the Defendant Rivas was acting within the scope of his employment and

to the benefit of XYZ Corporation in receiving the proceeds the Debtor transferred and then

forwarding the proceeds to her family in Iran, conduct which is prohibited by federal laws and regulations.

94.     The Code of the District of Columbia provides that, "A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  D.C. Code § 28-3105(a) (Transfers fraudulent as to present creditors).

95.     First, the Debtor was rendered insolvent by the Transfers, as demonstrated by foreclosures on both properties within approximately twelve months of the transfers.  *See* Debtor's Statement of Financial Affairs § 5, at 3, attached hereto as Exhibit 1 (foreclosure on Gainesville property December 2007; foreclosure on Centreville property July 2007).

96.     Second, the Transfers were without consideration as the Defendants provided nothing in exchange for the Transfers and the Debtor received no benefit from the transferees.

97.     The Debtor knew that the refinancing and Transfers of the proceeds placed such proceeds outside the reach of creditors and would leave her insolvent and without the ability to repay her creditors, secured and unsecured.

98.     The Defendant XYZ Corporation received the proceeds of the transfers through the authorized conduct of its agent/employee Rivas, and had no entitlement to the proceeds of the real estate sold by the Debtor.

99.    The Defendant XYZ Corporation routed funds through various entities to hinder, delay and defraud collection of the Debtor's funds by creditors and prospective creditors.

100.    The Transfers by the Debtor to the Defendant XYZ Corporation were intended to violate the laws of the United States of America.

101.    The transfers by the Debtor to the Defendants are fraudulent conveyances under the Code of the District of Columbia § 28-3105.

102.    Under 11 U.S.C. §§ 544 and 550, Plaintiff has standing to avoid the transfers in issue.

WHEREFORE, the Plaintiff demands the following relief:

A.    That this Court enter a judgment in favor of the Plaintiff and against XYZ Corporation in the amount of $80,000, for the conduct of Rivas, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds; and

B.    For such other and further relief as the nature of this cause may require.

## COUNT VII
### Fraudulent Conveyance under 11 U.S.C. § 544 as to
### Defendant XYZ Corporation via Respondeat Superior: Maryland Law

103.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 101 as if fully set forth herein.

104.    The United States Bankruptcy Code provides that a Trustee may avoid a "transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable" under section 502 or not allowable under section 502(e).  11 U.S.C. 544(b)(1).

105.    The Code further provides that, " . . . to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee."

11 U.S.C. § 550(a).

106.    At the time of the conveyance to the Defendants, the Debtor had unsecured creditors with permissible claims pursuant to 11 U.S.C. § 502.  *See, e.g.*, Debtor's Petition for Bankruptcy Schedule F (Creditors Holding Unsecured Nonpriority Claims), at attached hereto as Exhibit 4 ($134,202.00 owed to Home Coming Funding, 2711 N. Haskell Avenue, SW 1, Dallas, Texas 75204, an account the Debtor opened on November 1, 2006 and last active on April 1, 2007, the claim that arose due to the refinancing issue; $5,061.00 owed to Target NB, P.O. Box 673, Minneapolis, Minnesota, 55440, an account opened on January 1, 2005 and last active on May 16, 2008).

107.    At all times relevant to the Transfers on October 30, 2006 and December 6, 2006, upon information and belief, the Defendants Tabib, Sarreshten, Tahbaz, and Rivas were agents/employees of XYZ Corporation.

108.    At all times relevant to the Transfers on October 30, 2006 and December 6, 2006, upon information and belief, the Defendants Tabib, Sarreshten, Tahbaz, and Rivas were acting within the scope of their employment and to the benefit of XYZ Corporation in receiving the

proceeds the Debtor transferred and then forwarding the proceeds to her family in Iran, conduct which is prohibited by federal laws and regulations.

109.    At the time the Debtor filed a petition for Bankruptcy, she was a resident of the State of Maryland.   In the alternative to Count V and Count VI, the applicable law governing transfers is the Annotated Code of Maryland.

110.    The Commercial Law Article of the Annotated Code of Maryland states that, "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration."  Md. Code Ann., Comm. Law § 15-204.  Insolvent is defined as a person whose "present fair market value of . . . assets is less than the amount required to pay . . . probable liability on his existing debts as they become absolute and matured."  *Id.* at 15-202.

111.    The Commercial Law Article further provides "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud present or future creditors is fraudulent as to both present and future creditors."  Md. Code Ann., Commercial Law §15-207.

112.    First, the Debtor was rendered insolvent by the Transfers, as demonstrated by foreclosures on both properties within approximately twelve months of the transfers.  *See* Debtor's Statement of Financial Affairs § 5, at 3, attached hereto as Exhibit 1 (foreclosure on Gainesville property December 2007; foreclosure on Centreville property July 2007).

113.    Second, the Transfers were without consideration as the transferees provided nothing in exchange for the Transfers and the Debtor received no benefit from the transferees.

24

114.    The Defendant XYZ Corporation received the proceeds of the transfers through the authorized conduct of its agents/employees, Tabib, Sarreshten, Tahbaz, and Rivas, and had no entitlement to the proceeds of the real estate sold by the Debtor.

115.    The Defendant XYZ Corporation routed funds through various entities to hinder, delay and defraud collection of the Debtor's funds by creditors and prospective creditors.

116.    The Transfers by the Debtor to the Defendant XYZ Corporation were intended to violate the laws of the United States of America.

117.    The transfers by the Debtor to the Defendants are fraudulent conveyances under the Annotated Code of Maryland, Commercial Law Article § 15-201 *et seq*.

118.    Under 11 U.S.C. §§ 544 and 550, Plaintiff has standing to avoid the transfers in issue.

WHEREFORE, the Plaintiff demands the following relief:

A.    That this Court enter a judgment against the Defendant XYZ Corporation and in favor of the Plaintiff in the amount of $230,000, calculated as the sum total of

i.    $100,000 for the conduct of Tabib, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds;

ii.    $30,000 for the conduct of Sarreshten, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds;

25

   iii. $20,000 for the conduct of Tahbaz, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds; and

   iv. $80,000 for the conduct of Rivas, an agent/employee working for the benefit of XYZ Corporation in receiving the transferred funds; and

 B. For such other and further relief as the nature of this cause may require.

**COUNT VIII**
<u>Turnover of Avoided Fraudulent Conveyances  (11 U.S.C. § 550)</u>

119. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 118 as if fully set forth herein.

120. The Defendants were the initial transferee of the Transfers or the entity for whose benefit such transfers were made.

WHEREFORE, the Plaintiff demands the following relief:

A. That this Court enter a judgment against Defendants and in favor of Plaintiff as follows:

   i. $100,000 against Tabib;

   ii. $30,000 against Sarreshten;

   iii. $20,000 against Tahbaz;

   iv. $80,000 against Rivas; and

   v. $230,00 against XYZ Corporation; and

B. For such other and further relief as the nature of this cause may require.

26

Dated: <u>June 18, 2010</u>                        Respectfully submitted,

                                                   OFFIT KURMAN, P.A.

                                                   <u>/s/ James M. Hoffman</u>
                                                   James M. Hoffman (Bar No. 04914)
                                                   Sebastian Forgues (Bar No. 17946)
                                                   Offit Kurman, P.A.
                                                   4800 Montgomery Lane, 9th Floor
                                                   Bethesda, MD 20814
                                                   (240) 507-1710
                                                   jhoffman@offitkurman.com

                                                   Attorneys for Plaintiff, Cheryl E. Rose,
                                                        Chapter 7 Trustee

i:\jhoffman\rose - yusuf\yusuf complaint2.doc